## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:    1:18-CV-2147

| | |
|---|---|
| TONYA WINKLER-SAENZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ACUITY, A MUTUAL | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

_____

### CIVIL COMPLAINT AND JURY DEMAND
_____

The Plaintiff, Tonya Winkler-Saenz, by and through her undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submits the following Civil Complaint and Jury Demand and asserts:

### JURISDICTION AND VENUE

1.      At all times relevant to this action, Plaintiff Tonya Winkler-Saenz (hereinafter "Plaintiff") was a resident of the State of Colorado.

2.      Upon information and belief, at all times relevant to this action, Defendant Acuity, A Mutual Insurance Company (hereinafter "Defendant") was and is a Wisconsin corporation.

3.      Defendant maintains a registered agent for service in Centennial, Colorado: The Corporation Company, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is a civil action in which the parties are citizens of different states.

5.      Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b), as this is a District in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

6.      On or about August 30, 2017, at approximately 10:44 a.m., Plaintiff and Douglas Sherwood (hereinafter "Sherwood") were involved in a motor vehicle collision at or about the intersection of County Road 9E and East Highway 402 in Loveland, Colorado.

7.      Plaintiff was driving a 2007 Mercedes Benz E300 (hereinafter the "Mercedes") and was traveling westbound on East Highway 402, approaching the intersection of County Road 9E.

8.      Sherwood was driving a 2015 GMC Sierra (hereinafter the "GMC") traveling on southbound County Road 9E and was stopped at the intersection of East Highway 402.

9.      As Plaintiff approached the intersection in the Mercedes, Sherwood failed to keep a proper lookout and failed to notice Plaintiff's oncoming vehicle; as a result, Sherwood attempted to make a left turn from southbound County Road 9 onto eastbound East Highway 402, failing to yield the right of way to Plaintiff.

10.     As a result of Sherwood taking the right of way from Plaintiff, the front of the Mercedes struck the driver's side front of the GMC, causing severe damage to both vehicles.

11.     When Sherwood negligently failed to yield the right of way to Plaintiff, thereby causing the collision between the Mercedes and the GMC, Sherwood drove in a careless and imprudent manner and failed to take into account the safety of others, particularly that of the Plaintiff.

12.     Plaintiff suffered serious physical injuries as a result of the aforementioned collision including a fracture of the left distal fibula, medial malleolus fracture with ligament instability, and acute blood loss.

13.     As a result of her collision related injuries, Plaintiff was admitted to a rehabilitation hospital for approximately two weeks.

14.     As a result of her collision related injuries, Plaintiff has undergone significant medical treatment and has incurred over $100,000.00 in medical expenses to date.

15.     Plaintiff was not comparatively negligent at the time of the collision.

16.     Plaintiff did not cause the aforementioned collision.

17.     As a direct and proximate result of Sherwood's negligence, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses, loss of income, and other economic losses.

18.     As a direct and proximate result of Sherwood's negligence, Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress, and impairment of the quality of life.

19.     As a direct and proximate result of Sherwood's negligence, Plaintiff has suffered permanent physical impairment and disfigurement.

20.     Upon information and belief, Sherwood was an underinsured motorist at the time of the aforementioned collision, maintaining limited insurance coverage, less than what was necessary to compensate Plaintiff for her serious injuries and damages caused by Sherwood's negligence.

21.     At the time of the collision, Plaintiff was insured by Esurance, maintaining limited insurance coverage for underinsured motorist benefits in the event that an underinsured or uninsured motorist caused serious injuries and damages beyond the motorists' liability policy limits.

22.     At the time of the collision, Plaintiff's mother, Irene Winkler (hereinafter "Winkler"), resided with Plaintiff at Plaintiff's household, located at 1151 Eagle Drive, #196, Loveland, Colorado 80537.

23.     At the time of the collision, Winkler was insured by Defendant for Underinsured Motorist Benefits in the amount of $300,000.00, under policy number V36094-3 (hereinafter the "Policy").

24.     The Policy is a Wyoming Insurance Policy with effective coverage dates between March 4, 2017, and March 4, 2018.

25.     Defendant received premium payments from Winkler over substantial time in exchange for insurance coverage under the Policy, including UIM Benefits.

26.     The Policy included a provision for Underinsured Motorist Coverage that provided the following:

1.  We will pay compensatory damages which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured person** and caused by an accident.

    The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**.

2.  **"Insured person"** as used in this Part III – Uninsured Motorists means:

    a.  **You** or any **relative.**
    b.  Any other person occupying **your insured car.**
    c.  Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in a or b above.

The **Definitions Part** of this Policy states that "**You**" and "**yours**" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "**Insured**" means you and residents of your household who are:

a.  Your relatives; or
b.  Other persons under the age of 21 and in the care of any person named above.

Under **DEFINITIONS USED THROUGHOUT THIS POLICY,** **"Relative"** means a person living in **your** house-hold and related to **you** by blood, marriage or adoptions, including a ward or foster child.

Acuity reserves the right to limit or deny coverage in the event that applicable liability bonds or policies have not been exhausted by payment of judgments or settlement as set forth in Part III, C.1.a. which states:

With respect to coverage under Section b of the definition of **uninsured motor vehicle, we** will pay under this coverage only if a or b below applies:

a. The limits of liability under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicle** have been exhausted by payment of judgments or settlements.

27.     As Winkler resided with her daughter, the Plaintiff, at the time of the aforementioned collision, Plaintiff qualifies as an insured for purposes of UIM Benefits under the Policy.

28.     As an insured for UIM Benefits under the Policy, Plaintiff is entitled to recover UIM Benefits directly from Defendant in the event that Plaintiff was injured by an underinsured and negligent driver, such as Sherwood.

29.     Plaintiff required significant medical treatment and has suffered substantial losses as a result of the negligent driving of Sherwood, as described above.

30.     On October 5, 2017, Plaintiff, through counsel, notified Defendant of Plaintiff's claim for UIM Benefits with Defendant through the resident relative provisions of the Policy.

31.     On October 9, 2017, Defendant advised Plaintiff that Defendant had coverage questions regarding Plaintiff's claim for UIM Benefits.

32.     On the same day, Plaintiff's counsel notified Defendant that Winkler was indeed living with Plaintiff at the time of the aforementioned collision, and therefore should be entitled to coverage under the Policy. Defendant asked for verification that Winkler was residing with Plaintiff at the time of the aforementioned collision.

33.     On October 9, 2017, Defendant sent an additional email asking if Plaintiff had Underinsured Motorist Coverage under her own policy.

34.     Plaintiff's counsel responded to Defendant's email, indicating that Plaintiff did have her own Underinsured Motorist Coverage, but that fact does not disqualify her from using Winkler's UIM benefits, in addition to Plaintiff's own policy, as a resident relative of Winkler.

35.     The next day, October 10, 2017, Plaintiff indicated that she would provide Defendant mail that Winkler received at Plaintiff's residence to verify that Winkler resided with Plaintiff on the date of the aforementioned collision.

36.     On November 19, 2017, prior to being provided with mail received by Winkler at Plaintiff's household, Defendant sent a four-page Coverage Opinion to Plaintiff's counsel, advising that Defendant was denying Plaintiff's UIM claim.

37.     Within Defendant's letter, Defendant recited the policy language set forth above regarding Underinsured Motorist Coverage and stated that Plaintiff was not living in Winkler's household at the time of the collision. Defendant asserted that Winkler's residence and household was the address listed on Winkler's insurance policy of 4545 Edgewood Drive, Sheridan, Wyoming 82801.

38.     Defendant further stated that there was no evidence suggesting Plaintiff can be said to be a resident of Winkler's household under the Policy and further stated, "facts have not been presented demonstrating that [Plaintiff's] household is a premises where [Winkler] is temporarily residing."

39.     Defendant asserted that the facts did not demonstrate that Winkler maintained a household in Colorado, and even if Winkler did, Plaintiff was not a resident of Winkler's household. Rather, Defendant stated that Winkler was a resident of Plaintiff's household and did not maintain the requisite management or control necessary for Winkler to establish a household at the Loveland residence.

40.     Defendant thus determined that Plaintiff was not an insured under the policy and was therefore not entitled to UIM Benefits under the policy.

41.     At no time prior to making its coverage determination did Defendant request to interview Plaintiff or Winkler, either formally or informally.

42.     On January 8, 2018, Plaintiff's counsel sent an email to Defendant with attached copies of mail received by Winkler at Plaintiff's residence in Loveland, showing that Winkler received bills and other mail before, at the time of, and after the aforementioned collision at Plaintiff's Loveland address.

43.     In the January 8 email, Plaintiff stated that as Winkler resided with Plaintiff at the time of the collision, UIM benefits should be available to Plaintiff under the Policy through resident relative coverage.

44.     Plaintiff received no response from Defendant regarding Plaintiff's January 8, 2018, email.

45.     On February 9, 2018, Plaintiff sent GEICO Insurance, Sherwood's liability insurance carrier, Plaintiff's medical records and medical bills to date and asked that GEICO tender its policy limits to Plaintiff.

46.     After reviewing Plaintiff's medical records and medical bills alone, GEICO determined that Plaintiff's case was valued at more than Sherwood's insurance limits of $250,000.00, and thereafter offered those insurance limits to settle Plaintiff's claims against Sherwood.

47.     Thereafter, Plaintiff settled her bodily injury claim for Sherwood's policy limits of $250,000.00 after receiving permission from Defendant to accept those policy limits in an email dated February 28, 2018.

48.     Within the same email, Defendant advised counsel for Plaintiff that Defendant believed that Plaintiff's claim for UIM Benefits with Defendant lacked merit and that Defendant had previously denied coverage.

49.     Plaintiff has since resolved her claim with her own UIM carrier for the per person limits of $25,000.00.

50.     After receiving documentation from Plaintiff establishing that Winkler resided with her at the time of the aforementioned collision, Defendant did not ask for additional information or re-evaluate its position regarding Plaintiff's coverage under the Policy.

51.     As of the date of this filing, Defendant has consistently engaged in a pattern of behavior that is contrary to the interests of Plaintiff, one of its own insureds under the Policy.

52.     Plaintiff continues to suffer from the injuries sustained by her in the August 30, 2017, collision.

53.     To date, Defendant has refused to pay any benefits to Plaintiff under the terms of the Policy.

54.     Plaintiff has complied with all requests made by Defendant to assist Defendant in evaluating Plaintiff's coverage under the Policy.

55.      Defendant has unreasonably and in bad faith failed to conduct a reasonable investigation into Plaintiff's claim for UIM benefits under the Policy.

56.     Defendant has unreasonably and in bad faith failed to offer Plaintiff any UIM Benefits to resolve Plaintiff's claim under the Policy.

57.     Defendant has acted unreasonably and with knowledge of, or a reckless disregard for, it's unreasonable conduct.

## FIRST CLAIM FOR RELIEF
### Uninsured/Underinsured Motorist Benefits

58.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 57 of this Complaint, as if set forth *verbatim*.

59.     At the time of the aforementioned collision, Plaintiff qualified as an "insured" for purposes of a contract of insurance, the Policy, with Defendant.

60.     The Policy included a provision for uninsured/underinsured motorist bodily injury coverage, which provides that Defendant will pay for damages and bodily injuries sustained by Plaintiff, a relative of Winkler residing in the same household, if injured by a negligent and uninsured/underinsured driver.

61.     Sherwood was a negligent uninsured/underinsured driver for purposes of UIM Benefits owed to Plaintiff under the terms of the Policy.

62.     Plaintiff has satisfied all conditions precedent under the Policy and she is eligible to recover UIM benefits from Defendant under the Policy.

63.     Defendant is liable for Plaintiff's injuries and damages, as described above, caused by Sherwood.

## SECOND CLAIM FOR RELIEF
**Breach of Insurance Contract**

64.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 63 of this Complaint, as if set forth *verbatim.*

65.     The Policy was in full force and effect on the date and time the Plaintiff suffered injuries in the aforementioned collision.

66.     Defendant unreasonably investigated Plaintiff's claim for UIM benefits under the Policy and has unreasonably failed to pay Plaintiff UIM benefits owed under the Policy.

67.     Defendant breached its contractual duty owed to Plaintiff as an insured under the terms of the Policy. Defendant has breached its duty by failing to honor Plaintiff's claim for UIM benefits and by continuing to deny coverage to Plaintiff under the Policy.

68.     Defendant's breach has caused Plaintiff to suffer damages.

69.     Plaintiff is entitled to damages allowed by law for breach of contract against Defendant.

## THIRD CLAIM FOR RELIEF
**Breach of Duty of Good Faith and Fair Dealing**

70.      Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 69 of this Complaint, as if set forth *verbatim.*

71.     In relation to the handling of Plaintiff's claim, Defendant had legal duties of honesty, to abstain from taking intentional advantage of Plaintiff, to be faithful to the common purpose of the policy, to act in a manner that was consistent with the legitimate expectation of Plaintiff, and to do nothing that would injure Plaintiff's right to receive the benefits of the Policy.

72.     Defendant breached the aforementioned duties as fully set forth above by knowingly, recklessly, and unreasonably:

        a. Failing to conduct a proper investigation into the merits of Plaintiff's UIM claim;
        b. Unreasonably continuing to deny Plaintiff's claim after receiving documentation supportive of Plaintiff's claim;
        c. Delaying payment of the claim;
        d. Deliberately misrepresenting insurance contract provisions for the purpose of defeating coverage; and
        e. Failing to pay benefits under the Policy that were not fairly debatable.

73.     Defendant's breaches of the above-listed duties have caused Plaintiff increased emotional and financial stress.

## FOURTH CLAIM FOR RELIEF
### Violation of W.S. § 26-13-124
### Unfair Claims Settlement Practices

74.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 73 of this Complaint, as if set forth *verbatim.*

75.     To the extent that the Policy issued to Winkler is a Wyoming Insurance Policy and is interpreted by Wyoming Law, Defendant's actions as set forth above constitute violations of Title 26 of the Wyoming State Statutes, in particular section 26-13-124. Defendant has violated section 26-13-124 in the following ways:

      a.     Failing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to Plaintiff's UIM claim regarding Winkler's address; and

      b.     Denying coverage to Plaintiff under the Policy without conducting a reasonable investigation based on all available information;

76.     Defendant's failure to investigate Plaintiff's UIM claim under the Policy and failure to re-evaluate Plaintiff's claim after Plaintiff submitted proof to Defendant of Winkler's residence with Plaintiff was unreasonable or without cause.

77.     Pursuant to W.S. § 26-15-124, Plaintiff is entitled to recover statutory remedies in addition to her damages, consisting of attorney's fees and interest of 10% per year.

## FIFTH CLAIM FOR RELIEF
### Bad Faith

78.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 77 of this Complaint, as if set forth *verbatim.*

79.     Defendant owed Plaintiff a duty of good faith and fair dealing.

80.     Defendant's actions as set forth above amounted to bad faith and unreasonable conduct under Wyoming law and Defendant knew its actions were unreasonable and/or recklessly disregarded the fact that its actions were unreasonable.

81.     Defendant breached its duty of good faith and fair dealing, its covenant to act in good faith with regard to Plaintiff, and acted unreasonably in, as stated above, the following ways, including, *but not limited to*:

      a.     Taking an adversarial position to its insured;

      b.     Making a coverage determination prior to being provided with sufficient information to make said determination;

      c.     Refusing to re-evaluate its coverage determination after being provided information to support Plaintiff's entitlement to coverage;

      d.     Using strained interpretations of Policy provisions to deny coverage to its insured; and

        e.      Failing to pay Plaintiff UIM benefits owed under the Policy.

82.    As a direct and proximate cause of Defendant's unreasonable actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages as described above.

**SIXTH CLAIM FOR RELIEF**
**Unreasonable Delay/Denial of a Claim for Benefits**
**Pursuant to C.R.S. §§ 10-3-1115-1116**

83.    Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 82 of this Complaint, as if set forth *verbatim*.

84.    Defendant unreasonably denied Plaintiff's request for benefits, in violation of C.R.S. §§ 10-3-1115 and 10-3-1116, in the various ways set forth above, including, *but not limited to*:

      a.    Making a coverage determination prior to being provided with sufficient information to make the determination;

      b.    Refusing to re-evaluate its coverage determination after being provided information to support Plaintiff's entitlement to coverage;

      c.    Using strained interpretations of Policy provisions to deny coverage to its insured; and

      d.    Failing to conduct an adequate coverage investigation into Plaintiff's claim for benefits under Winkler's policy.

85.    Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover the covered benefit plus twice the covered benefit as well as attorney fees and costs from Defendant for the unreasonable delay and denial of her claim for underinsured motorist benefits.

**WHEREFORE,** the Plaintiff, Tonya Winkler-Saenz, prays for judgment against Defendant Acuity, A Mutual Insurance Company, in an amount to be determined by the trier of fact for her losses as set forth above and for costs, expert witness fees, filing fees, pre-and post-judgment interest, and such other and further relief as the Court deems appropriate, just, and proper.

**DEMAND FOR JURY TRIAL**

    Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED:  August 22, 21018

Respectfully submitted,

ZANER HARDEN LAW, LLP


s/ *Marc Harden*
Marc Harden, Esq. #36812
Britt A. Holtz, Esq. #49051
Zaner Harden Law, LLP
1610 Wynkoop St., Suite 120
Denver, CO 80202
Phone: (303) 563-5354
Fax:    (303) 536-5351
E-mail: mh@zanerhardenlaw.com
        bh@zanerhardenlaw.com


Plaintiff's Address:

1151 Eagle Drive, #196
Loveland, Colorado 80537